# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER LYNN HANNIGAN REILLY, : | | CIVIL ACTION |
|                 Plaintiff : | | |
|        v. : | | |
| ANDREW SAUL, : | | |
| Commissioner of the : | | |
| Social Security Administration, : | | |
|                 Defendant : | | NO. 18-4826 |

## MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                      October 17, 2019

      Jennifer Lynn Hannigan Reilly ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Plaintiff has filed a brief in support of her motion for summary judgment,[1] the Commissioner has responded to it, and Plaintiff has filed a reply. For the reasons set forth below, the Commissioner's final decision is affirmed.

## I.    PROCEDURAL HISTORY[2]

      On February 20, 2015, Plaintiff applied for DIB and Supplemental Security Income ("SSI"), alleging disability since November 29, 2013, because of physical and mental health problems. R. 31. Her claim was denied, initially, therefore, Plaintiff requested a hearing. *Id.* On December 2, 2016, Plaintiff appeared before Nadine Overton, Administrative Law Judge ("the ALJ"), for an administrative hearing; Plaintiff, who was represented by an attorney, and vocational

---

[1] The Scheduling Order in this case expressly directs the Plaintiff to file a Brief and Statement of Issues in Support of Request for Review, not a Brief in Support of a Motion for Summary Judgment. Counsel should take care to comply with the court's Scheduling Orders.

[2] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief in Support of Motion for Summary Judgment ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), and the administrative record. ("R.").

expert Jeff Barrett ("the VE"), testified at the hearing. R. 73-112. On February 24, 2017, the ALJ, using the sequential evaluation process for disability,[3] issued a decision finding Plaintiff disabled, beginning June 1, 2015. R. 31-46. That starting date entitled Plaintiff to SSI benefits, but not DIB. *Id.* The Appeals Council denied Plaintiff's request for review, on October 17, 2018, making the ALJ's findings the final determination of the Commissioner. R. 1-4. Now, Plaintiff seeks judicial review in this court; the parties have consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c).

## II. FACTUAL BACKGROUND

A. <u>Personal History</u>

Plaintiff, born on January 9, 1961, R. 80, was 46 years old when the ALJ rendered her decision. She completed three years of college, R. 82, and has past relevant work as a collection clerk and claim adjuster. R. 108. At the time of the hearing, Plaintiff was separated from her

---

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

2

second husband and lived with her three daughters, ages 13, 7 and 3.  R. 80-81.

B.	Plaintiff's Testimony

Plaintiff testified about her impairments at the December 2, 2016 administrative hearing. She focused her disability claim on intractable migraines, side-effects from her medication, post-traumatic stress disorder ("PTSD"), and anxiety.  R. 85-106.  Plaintiff's migraines can occur at any time of the day, sometimes commencing while she is asleep.  R. 85, 97.  She reported experiencing three to four migraine headaches each week that typically last from four to five hours to twenty-four hours.  R. 95.  Plaintiff's migraines affect her vision, sometimes causing temporary blindness in both eyes.  R. 96.

One of Plaintiff's medications disrupts her sleep patterns; sometimes, she sleeps too long and cannot awaken in the morning; other times, Plaintiff is unable to fall asleep at night, because she slept too much during the day.  R. 87.  Another medication affects her short-term memory, causes tingling in her hands, the dropping of objects, face tingling under her eyes, and eye pain. R. 86-87.  A third medication triggers dry mouth and constant thirst.  R. 87.

Plaintiff witnessed her father abuse her mother and attempt to kill her mother while they were still married and, again, after her mother left him.  R.103-04.  While in college, Plaintiff attempted suicide.  R. 103.  In 2009, while Plaintiff was pregnant with her first child, her first husband beat her, in an effort to cause a miscarriage.  R. 104.  Plaintiff married a second man who, after they separated, came to her home, in February 2016, and raped her.  R. 89-90.  The next month, Plaintiff obtained a restraining order.  R. 90.  Despite that, her second husband still calls her cell phone and hangs up as soon as she answers.  R. 92.  Plaintiff is in constant fear of encountering her second husband; she stopped attending church, because he knows the location and the time of Mass.  R. 94.

3

Plaintiff is unable to perform many household tasks. Her oldest daughter washes the family's clothing and vacuums the house; this child has done the laundry since she turned eleven years old. R. 88, 92. The oldest child also microwaves pre-prepared meals for the family, when her mother cannot. R. 89. Plaintiff grocery shops in bulk, to minimize the cost and the number of trips to the store. R. 89. Plaintiff is able to dress and groom herself; however, some days, she does not shower or remove clothing she wore the previous day. R. 87-88. Aproximately every two weeks, Plaintiff is too incapacitated to attend to her children and calls a friend to assist with their care. R. 88.

C. <u>Vocational Testimony</u>

The VE classified Plaintiff's past job as a collection clerk as semi-skilled[4] and sedentary;[5] her job as a claim adjuster was semi-skilled and light.[6] R. 108-09. The ALJ asked the VE to consider a person of Plaintiff's age, education, work experience, who had no exertional limitations, but needed to avoid concentrated exposure to fumes, dust, odors, gases, or poorly ventilated areas; additionally, the person needed to avoid hazardous machinery and unprotected heights. R. 108. The VE responded that this person could perform both of Plaintiff's past jobs. *Id.* Next, the ALJ asked the VE to consider the same person, but who was limited to performing simple, routine, repetitive, concrete, tangible tasks. R. 109. The VE answered that this limitation would preclude both of Plaintiff's past jobs. *Id.* However, the person could perform the following, alternative jobs: (1) counter and rental clerk, a sedentary job (447,000 positions in the national economy); (2)

---

[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. §§ 404.1568(b), 416.968(b). It is less complex than skilled work but more complex than unskilled work. *Id.* "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

stock checker, a light job (88,240 positions in the national economy); and (3) investigator, a light job (177,210 positions in the national economy). R. 109-10. The VE further opined that, if the hypothetical individual was absent from work more that five times each month, she could not sustain any employment. R. 110-11.

### III. THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] met the insured status requirements of the Social Security Act through December 31, 2014.

2. [Plaintiff] has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. Since the alleged onset date of disability, November 29, 2013, [Plaintiff] has the following severe impairments: obesity and right knee osteoarthritis. Beginning on the established onset date of disability, June 1, 2015, [Plaintiff] has had the following severs impairments: migraine headaches, obesity, and right knee osteoarthritis (20 CFR 404.1520(c) and 416.920(c)).

4. Since the alleged onset date of disability, November 29, 2013, [Plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that, prior to June 1, 2015, the date [Plaintiff] became disabled, [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: avoid concentrated exposure to irritants such as fumes, dusts, odors, gases and poorly ventilated areas; and avoid machinery and unprotected heights. [Plaintiff] could understand, follow, and remember simple instructions in the context of simple, routine, repetitive, concrete, tangible tasks and should be limited to unskilled work.

6. After careful consideration of the entire record, I find that begining on June 1, 2015, [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: avoid concentrated exposure to irritants such as fumes, dusts, odors, gases and poorly ventilated areas; and avoid machinery and unprotected heights. [Plaintiff] could understand, follow, and remember simple tasks in the context of simple, routine, repetitive, concrete, tangible tasks and should be limited to unskilled work. [Plaintiff] would be absent greater than five times per month.

7. Since November 29, 2013, [Plaintiff] has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. Prior to the established disability onset date, [Plaintiff] was a younger individual age 18-49. [Plaintiff's] age category has not changed since the established disability onset date (20 CFR 404.1563 and 416.963).

9. [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Prior to June 1, 2015, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled" whether or not [Plaintiff] has transferrable job skills. Beginning on June 1, 2015, [Plaintiff] has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404. Subpart P, Appendix 2).

11. Prior to June 1, 2015, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed (20 CFR 404.1569, 404.1569a, 416.969 and 416.969a).

12. Beginning on June 1, 2015, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

6

13. [Plaintiff] was not disabled prior to June 1, 2015, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

14. [Plaintiff] was not under a disability, within the meaning of the Social Security Act, at any time through December 31, 2014, the date last insured (20 CFR 404.315(a) and 404.320(b)).

R. 33-34, 38-39, 41-45.

## IV. DISCUSSION

A. Standard of Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). It is more than a mere scintilla of evidence but may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.  Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff is capable of performing given her age, education, work experience and residual functional capacity. *See Poulos,* 474 F.3d at 92; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.  Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that Plaintiff became disabled on June 1, 2015; consequently, she was entitled to SSI benefits, but not DIB, because her date last insured was December 31, 2014. R. 31-46. Plaintiff challenges this conclusion and maintains that the ALJ erred by determining that her migraines worsened after June 1, 2015, not

during 2014, before her date last insured. Pl. Br. at 8-10. The Commissioner counters that substantial evidence supports the ALJ's determination that Plaintiff's condition worsened over time and that she was not disabled until June 1, 2015. Resp. at 4-15. This court finds that, although it is a close question, substantial evidence does support the ALJ's conclusion that Plaintiff's migraines became disabling after her date last insured.

In her Decision, the ALJ cites numerous medical records and Plaintiff's own statements which indicate that Plaintiff's migraine symptoms increased in frequency and intensity from 2015 to 2016. *See* R. 35, 42-43. While Plaintiff certainly had significant migraine symptoms in 2014, the ALJ considered those as well. *See* R. 34-35 (noting emergency room visits due to migraine symptoms before the date last insured). The ALJ noted that, in September 2014, medication administered in a hospital emergency room improved Plaintiff's migraine symptoms. *See id.* at 35 (citing R. 427). However, in 2015, Plaintiff's headaches worsened; she reported having 15 days of migraines in a month, and, in September 2015, her treatment regimen intensified as she received three days of infusions, Botox injections, and nerve blocks in an attempt to control her headaches. *See id.* at 42 (citing R. 1105-1218).[7] Despite these increased treatment modalities, Plaintiff's migraines persisted. In July 2016, her headache symptoms had worsened to the point that she became unable to clean her home. *See id.* at 43 (citing R. 1208). This is consistent with Plaintiff's testimony at the hearing. R. 92.

In light of this record evidence that Plaintiff's migraine symptoms worsened in 2015 and 2016, despite intensifying treatment, it was reasonable for the ALJ to conclude that Plaintiff's migraines became disabling in 2015 rather than in 2014. Certainly, substantial evidence, which is not a great deal of evidence, *Pierce*, 487 U.S. at 565, supports that conclusion. Since there is

---

[7] These pages of the administrative record are February 1, 2016 to August 30, 2016 treatment notes from the Jefferson Headache Center where Plaintiff began treatment in September 2015.

9

substantial evidence to support the ALJ's conclusion, it should be affirmed.

## V. CONCLUSION

A thorough review of the record indicates that Plaintiff's assertions of error lack merit. Accordingly, an implementing Order and separate Order of Judgment follow.